CHARLES H. LEWIS *vs.* DANIEL SMART.

Oxford.   Decided December 28, 1877.

*Replevin.   Trial.*

Where the defendant in replevin with the general issue pleads also property in himself and in third parties whose bailiff he is, avows the taking and demands a return, it is not necessary for the plaintiff to prove a demand for the goods previous to suing out the writ of replevin.

*Seaver* v. *Dingley,* 4 Maine, 306, reaffirmed.

After a trial upon the question of property in the goods presented by such pleadings, the defendant cannot be heard to complain of alleged errors and defects in instructions given as to what would constitute a demand and refusal. Such instructions are immaterial.

The plaintiff delivered to the defendant a letter from his son at the time he signed the mortgage note and pointed out to the plaintiff the property included in the mortgage. There was no evidence given or question asked as to the contents of the letter. The presiding justice said to the jury: "Was it a letter giving some directions from young Smart to his father in connection with that property? You have a right to draw all proper inferences in regard to it, whether it was in regard to that matter or not." *Held*, that the occurrence was one which the jury might properly consider on the question of the estoppel claimed against the defendant; and that the inquiry did not amount to the expression of an opinion and was not exceptionable.

It is proper for the judge in settling exceptions to require the excepting party to state such parts of the testimony as may have a bearing upon the question of the pertinency of the instructions.

ON EXCEPTIONS.

REPLEVIN of a yoke of oxen, a cow, a horse and a wagon.

The defendant pleaded title in himself to the oxen, cow and wagon, and that the horse belonged to the estate of his deceased wife (which had not been administered upon) and that she left children, and denied the title or right of possession of the plaintiff, and introduced testimony tending to prove the truth of his plea.

The plaintiff claimed title in himself and also that the defendant was estopped by his acts to deny the title and right of possession of the plaintiff, and introduced testimony, uncontradicted, that in 1875, he and Daniel R. Smart, son of the defendant, were for a short time partners in trade, in Boston ; that in May of that year, the plaintiff sold out to Daniel R. and took his note for $400, payable in ten months, secured by a bill of sale, absolute in form, of the property replevied, which was then in the possession of the defendant in Sweden, Maine, on the farm of his deceased wife, where the defendant then and has ever since resided ; that Daniel R. then represented to the plaintiff that the property was his, that his father, the defendant, would sign the $400 note, and that the plaintiff should then pay a certain note of about $300 then held by one J. E. Hutchins of Lovell, signed by the defendant and D. R. Smart, and also by the plaintiff as surety ; that in a few days thereafter the plaintiff and his father, who then lived in Lovell, went to

the defendant's residence, exhibited to him the bill of sale and $400 note, and at the same time gave the defendant a letter from his son, D. R. Smart; that the defendant pointed out the property described in the bill of sale, at the plaintiff's request, made no objections to the bill of sale, and did not deny the title of his son, D. R. Smart; that the plaintiff paid the $300 note to Hutchins; and that the property was left and remained in the possession of the defendant until June, 1876, when it was taken by the officer on this writ. The plaintiff and defendant both testified to the circumstances and the conversation attending the delivery of the letter; there was no notice to produce the letter at the trial, nor any question asked as to its contents. There was testimony tending to show the admission of the defendant that the goods and chattels replevied were the individual property of his son, D. R. Smart.

The defendant, on cross-examination, on being asked why, when the bill of sale, note and letter were handed to him and he pointed out the property, he did not tell the plaintiff that the property was not the property of D. R. Smart, answered, "for fear the thing would burst up, fall in."

The presiding justice, among other things, said to the jury: "what were the contents of that letter, which both Smart and Lewis testified Lewis brought there from young Smart and handed to his father, the defendant; its contents have not been put in. Was it in regard to this matter? Did it contain some directions from young Smart to his father in connection with that property? You have the right to draw all proper inferences in regard to it, whether it was in regard to that matter or not."

The presiding justice charged the jury at length as to what would constitute a demand and refusal, in terms which it becomes unnecessary to state.

The verdict was for the plaintiff; and the defendant alleged exceptions.

*A. Black,* for the defendant.

*A. H. Walker, D. R. Hastings,* with him, for the plaintiff.

BARROWS, J. The owner or person entitled to the possession of chattels may, under our statutes, replevy them from any one who

has wrongfully taken them, or, who coming rightfully into posses-
sion of them, wrongfully detains them from him.   One or the other
of two different and entirely inconsistent contentions is liable to
arise in a suit of this sort, depending on the defendant's pleadings.
If he pleads merely, I did not take the chattels, he thereby admits
the property in them to be in the plaintiff, and is not at liberty
under that plea to dispute it; and he thereby throws upon the
plaintiff the burden of proving only that he wrongfully took or
wrongfully detained the goods at the place alleged.   But, on the
other hand, if by his pleadings he avows the taking and justifies it
on the ground that the goods belong, not to the plaintiff, but to
himself or to some third person whose bailiff he is, and so demands
a return, the question then is as to the property and right of pos-
session of the plaintiff, and the burden upon the plaintiff is to
establish these, only, as against the defendant.

Hence the decision in *Seaver* v. *Dingley*, 4 Maine, 306, where
the point is thus tersely stated by Mr Greenleaf in his head note:
" In replevin of goods, the original taking of which by the defend-
ant was lawful, if he plead property in himself, it is not necessary
for the plaintiff to prove a demand of the goods previous to suing
out the writ of replevin ;" and Mellen, C. J., speaking for the
court, remarks as follows: (p. 317) "the plaintiff, in his writ,
makes the allegations required by statute, as to his own property in
the goods, and the unlawful detention of them by Dingley ;   and
the defendant pleads in bar of the action property in himself ; thus
waiving all objection as to the regularity of the proceedings on the
part of the plaintiff ; not denying that he took and detained the
goods, but denying that he did either unlawfully, because, as he
stated in his plea, the goods were his own ;   .   .   .   As by the
plea of *non cepit*, the question of property is not in issue, (1
Chitty's Pl. 499) so by the plea of property in himself, he did
not deny the plaintiff's right to recover the goods, if they, by law,
belonged to him ; and as the jury have by their finding decided
that fact in favor of the plaintiff, we are well satisfied that the
defendant cannot now be received to urge the want of a previous
demand of the goods, as an objection to the verdict."   It is plain
that the two positions represented by these two pleas are irreconcil-

able with each other. The defendant cannot in one and the same breath avow and justify the taking on the ground of superior right to the plaintiff, claiming a return, and still insist if that claim is negatived that he did not take the property, any more than he can be heard to dispute the plaintiff's property when he only says he did not take or detain wrongfully, as alleged.

The action of replevin for goods and chattels bears much the same relation to personal property that our writ of entry as regulated by statute does to real estate. The analogies are numerous and striking. The plaintiff in a writ of entry alleges his title and right of possession in the land, and a wrongful and continued ouster from the possession by the defendant. Of course upon such allegations there would be a palpable inconsistency in the defendant's saying "the land is mine, but I never denied the plaintiff's right in it." But perhaps on account of the old notion of the superior dignity and importance of real estate as compared with personal chattels, our law-makers have been unwilling to leave the course and effect of the pleadings to be regulated by common law decisions, and they have accordingly declared by statute that if the party named as defendant claims no freehold in the premises he may plead it in abatement, or by brief statement under the general issue within the time allowed for filing pleas in abatement and not afterwards without an order from the court enlarging the time. Or, if he has actually ousted the demandant or withheld the possession from him, he may be regarded as a disseizor for the purpose of trying the right; but, in any case, the plea of the general issue alone puts the strength of the respective titles only in issue. Now without any such statute regulation respecting the pleadings in replevin, but upon a like view of the necessary inferences from certain pleadings, Judge Mellen remarks, while holding in *Seaver* v. *Dingley, ubi supra,* that no previous demand is necessary where the defendant pleads title in himself or a stranger, as follows : "We do not perceive why a defendant in replevin, who has no merits and pretends to none" (*i. e.* who asserts no title in the property) " might not plead in abatement, that the goods replevied came lawfully into his possession, and that he did not unlawfully detain them ; or he might be more particular and say that no demand for

the goods had ever been made upon him previous to the commencement of the action." But in the absence of any statute provision requiring a defendant in replevin to plead his non-claim in abatement or within the time allowed by the rules for the filing of pleas in abatement, he may doubtless put the plaintiff to the proof of a tortious taking or detention by the proper plea at any time before proceeding to trial; yet, if, claiming a better right than the plaintiff, he avows the taking and demands a return, we can only reaffirm the doctrine of *Seaver* v. *Dingley*, and hold that under such pleadings no proof of previous demand is necessary though his possession may originally have been lawful.

In the present case the defendant pleaded title in himself and in the estate of his deceased wife, in the chattels replevied, and after what seems to have been an acrimonious controversy before the jury upon the question of title, including the question whether the defendant was not estopped to assert such title by reason of his complicity in the fraud perpetrated by his son, (the plaintiff's mortgager) in case the son had no title, and when the jury has settled one or both of these questions against him, he comes here to complain that the judge presiding at the trial gave erroneous and deficient instructions as to what would constitute a demand upon and refusal by him to surrender the possession. The only conclusion which we can draw from the case is that such a demand would have been an idle ceremony which the law will compel no man to perform or prove. A part of the defendant's complaint is that the judge expressed doubts of the necessity of a previous demand, while upon the whole he instructed the jury that one was required. The doubts should have prevailed. The instruction was probably owing to a failure in the haste of a jury trial to observe that in none of the cases where a demand has been held necessary did the defendant by his pleadings assert a title superior to that of the plaintiff. Thus in *Newman* v. *Jenne*, 47 Maine, 520, the lawfulness of his possession by virtue of the plaintiff's permission and the want of a demand were all that the defendant asserted (amounting merely to *non cepit*) and the court held that as the defendant had done nothing except in submission to the plaintiff's title, a demand should have been proved, in order to change a possession

originally lawful into a tortious detention.    But the case is in perfect harmony with *Seaver* v. *Dingley*, and with *Partridge* v. *Swazey*, 46 Maine, 414, where a sale by the mortgager in possession was held to be such a repudiation by the possessor of the mortagee's paramount rights as to make a demand upon his vendee unnecessary.

The error which the judge committed was not one which can give the defendant any just cause of complaint.

Nor do we see anything exceptionable in the suggestions made to the jury in respect to the letter delivered by the plaintiff to the defendant, and read by him at the time when he signed the note and pointed out the property included in the mortgage to the plaintiff.    Neither of the parties had undertaken to prove its contents ; but they stood in a different position with regard to their ability to do so.    The plaintiff had no knowledge of the contents. He knew only what the defendant's son said he wrote, and this he communicated to the defendant and testified to as part of the conversation between the parties.    The defendant seems to have had it in his power to give or to withhold them, and made his election.    The occurrence was one which, looking at the position of the parties on the question of an estoppel as well as upon that of title, the jury were at liberty to draw all proper inferences from, and that was all which was permitted under the instructions.

It is proper for the court in settling exceptions to require the excepting party to insert such parts of the testimony as may have a bearing upon the question of the pertinency of the instructions ; and nothing more seems to have been done here.

*Exceptions overruled.*

APPLETON, C. J., WALTON, VIRGIN, PETERS and LIBBEY, JJ., concurred.