## JOHN V. FARWELL ET AL.
### v.
## SETH F. HANCHETT ET AL.

1. VENDOR AND VENDEE—FRAUDULENT REPRESENTATIONS—WHEN
NO CONSIDERATION GIVEN.—When goods are obtained by fraudulent repre-
sentations by a vendee and no money, note or other thing of value has been
given the vendor for them, nothing being required to be done to put the
vendee in *statu quo*, the vendor may, without demand, maintain replevin
for the goods against any person not holding them as a *bona fide* purchaser
for value and without notice.

2. TRESPASS OR TROVER—RESCISSION AT TRIAL.—When goods have
been obtained by fraud, and notes or other things of value have been given
in exchange for them, and the vendor seeks to obtain, not the possession of
the goods by replevin, but the value of the goods in an action of trespass or
trover for the conversion, then the consideration received by the vendor
need not be tendered back before action brought, but may be tendered back
on the trial, and the rescission so made at the trial will be in apt time, and
in such case no prior demand need be proved to sustain the trover count.

3. REPLEVIN—RESCISSION—DEMAND.—But if goods are obtained by
fraud and the vendor receives a consideration of any kind therefor from the
fraudulent vendee, before he can maintain replevin for the goods, he must
return or offer to return to the vendee, the consideration, whatever it may
be, before bringing suit, and having done so and thus rescinded the contract,
the original taking will, in law, be regarded as tortious and no demand
need be made for the goods. If, however, the goods are taken on a replevin
writ, without the contract having been rescinded by placing the vendee in
*statu quo*, yet a return will not be awarded if plaintiff makes out his claim
of fraud and the consideration is tendered back on the trial, but in such
case the plaintiff will be subjected to the costs.

4. SAME.—The sheriff set up title to the goods in the alleged fraudulent
vendee and claimed the right to hold them under his execution. *Held*, that
the plaintiffs, vendors, were not entitled to maintain their replevin suit, not
having rescinded the contract and tendered the vendee his note prior to the
commencement of the action, and this wholly irrespective of the question of
demand, and the jury having, on the plea of property, found the title in the
defendants, they were entitled to a *retorno*.

APPEAL from the Circuit Court of Cook county; the Hon.
ELLIOTT ANTHONY, Judge, presiding. Opinion filed June 16,
1886.

Messrs. FLOWER, REMY & GREGORY, for appellants; that the taking was tortious, cited Kellogg v. Turpie, 93 Ill. 266; Doane v. Lockwood, 4 N. E. Reporter, 500; Dow v. Sanborn, 3 Allen, 181; Boyd v. Hall, 2 Keyes, 647; Johnson v. Morrell, 2 Keyes, 655; Story on Sales, § 445 a.

The taking being wrongful, no demand was necessary: Wells on Replevin, §§ 345, 365; Bristol v. Wilsmore, 1 Baud. C. 514; Bancroft v. Blizzard, 13 Ohio, 30; Brussing v. Rice, 2 Cush. 48; Buffington v. Gerrish, 15 Mass. 156; Butters v. Haughwout, 42 Ill. 18; Ryan v. Brant, 42 Ill. 78; Hardy v. Keeler, 56 Ill. 152.

Messrs. BRANDT & HOFFMANN, for appellees; that a proper demand was a condition precedent to the commencement of this suit, cited Moriarty v. Stofferan, 89 Ill. 528; Wells on Replevin, § 368; Tuttle v. Robinson, 78 Ill. 334.

MORAN, J.  This was an action of replevin brought by appellants against appellees to recover possession of certain dry goods, which it was claimed by appellants were purchased by Simon Heller from John V. Farwell & Co., by means of false representations as to his financial standing and ability, and when he was insolvent and knew it, and that he made the purchases intending not to pay for the goods.  To the declaration, which is in the usual form in replevin, defendants jointly pleaded *non cepit, non detinet,* property in Simon Heller, property in Abraham Heller, and as to Hanchett, the sheriff, a separate plea of justification under a certain execution against Simon Heller, in favor of Abraham Heller.  On these pleas issue was properly joined, and the case was tried before a jury.

There was introduced in evidence a writing signed by Simon Heller as follows:

" CHICAGO, Ill., April 4, 1882.

I, Simon Heller, of 167 Blue I. Ave., County of ——, State ——, for the purpose of obtaining credit with John V. Farwell & Co., of Chicago, Ills., for goods which I may now or hereafter purchase of them, do make the following statement

and representations of my present true financial circumstances, wealth and mercantile respectability, which said representations shall be the basis of my credit with John V. Farwell & Co. during the period of five years from this date, agreeing to immediately notify them of any material change in or of my business matters during the period above mentioned."

There follows a statement of assets and liabilities, showing Heller to be worth about ten thousand dollars above his liabilities.

Heller continued to buy goods from Farwell & Co. from the date of this statement until his failure in December, 1884, at which time he owed the firm something over four thousand dollars.

December 1, 1884, Heller gave Farwell & Co. his note for $550, to apply on what was due from him to them. The goods sought to be replevied were purchased at different times during the year 1884, and there was much controversy on the trial as to whether the goods taken on the writ were goods purchased from the Farwells. There was also a conflict in the evidence as to whether Heller made to the firm any statements or representations as to his financial condition subsequent to that made April 4, 1882, and evidence was introduced by defendants tending to show that Farwell & Co. had knowledge from other sources, from which the change in Heller's condition during the two years could well be inferred. There was also a conflict as to whether the original statement when made, was true or false. Before commencing the action, plaintiffs made a demand for the goods, which were then in the possession of the sheriff, upon the chief deputy in the sheriff's office, but no offer was made to surrender Heller's note for $550, held by Farwell & Co., till upon the trial of the case. The court gave all plaintiffs' instructions as asked, and gave on behalf of defendants the two following, of which appellants complain.

1. " The jury are instructed that the fraud which will vitiate a contract which is made by false representations must be a representation of a past or present state of facts, and not of an intention for the future. The party making

the representations must know it to be false and he must use it as a means to deceive. The complaining party must be ignorant of the facts, and believe the representations to be true. The party making the representation must intend it to be acted on and the party complaining must have acted upon it."

2. "The jury are instructed that before the plaintiffs can recover in this case they must prove that they demanded the goods in controversy of Simon Heller, or of some one who, at the time, had them in his possession; and unless such proof is made the plaintiff can not recover in this case."

As to the first of the above instructions, it is insisted that it is in conflict with one given on behalf of plaintiffs. We are inclined to the opinion that there is, in fact, no conflict between the instructions, but if a conflict can be found, in view of the written statement and the evidence in this case, we think defendants' instruction states the law with sufficient accuracy, and if either is subject to adverse criticism, it is the instruction given at plaintiffs' request. Defendants' instruction is probably obnoxious to the objections pointed out in McBean v. Fox, 1 Bradwell, 177, but in this case the error is harmless.

The instruction on demand was not, in our opinion, warranted. If the plaintiffs had properly rescinded the sale of the goods by tendering to Heller, before commencing their action, his note, a technical demand for the goods would not be necessary.

Where goods are obtained by fraud practiced on the vendor and the fraudulent contract is rescinded, the fraudulent vendee is not considered as a purchaser of the goods, but as a person who has tortiously gotten possession of them. Kellogg v. Turpie, 93 Ill. 266. That is, the original taking is treated as tortious, and in such case, where the goods are sold on credit and the vendor has not obtained the vendee's note or money or other property in payment or exchange for the goods, so that there is nothing to be returned by the vendor to the vendee, in order to place the vendee in *statu quo*, replevin for the goods may be maintained without a

previous demand, where the goods remain in the possession of the fraudulent vendee, or are taken by an officer under an execution against him, or are in the hands of a purchaser from such fraudulent vendee, who was privy to the fraud. Acker v. Campbell, 23 Wend. 372; Bussing v. Rice, 2 Cushing, 48; Butters v. Haughwout et al., 42 Ill. 18; Hardy v. Keeler, 56 Ill. 152; Bruner v. Dyball, 42 Ill.34; Goldschmidt et al. v. Berry, for use, etc., 18 Bradwell, 276.

In case, however, the vendor has received the notes of the fraudulent vendee, then, before he can rescind the contract of sale and reinvest himself with the title to and right of possession of the goods, the vendor must return or offer to return the consideration, whatever it may be, received from the fraudulent purchaser. In such case a formal demand for the goods will not rescind the contract, and if there is a proper rescission before replevin brought, no demand is necessary in order to entitle the plaintiff to maintain his action. An offer to return the consideration and a request for rescission, however informal, is sufficient, and no demand for the goods need be made. Parish v. Thurston, 87 Ind. 437. Some misapprehension as to this rule has arisen from the language used in the brief opinion of Mr. Justice Dickey, in Moriarty v. Stofferan, 89 Ill. 528. There the vendor had received the note of the vendee, from whom he endeavored to replevy the property sold without offering, before the action was commenced or on the trial thereof, to return the note. He, of course, was not entitled to the possession of the property at the time he commenced his action. The court said: "If his allegation be true, he undoubtedly had a right to rescind the contract by offering to return the note. He, however, was not in condition to bring his action until he had offered to return the note and demanded the property."

We do not think that by this language it was intended to rule that a formal demand for the property was necessary in such case in addition to a rescission of the contract, and from the opinion in the recent case of Doane v. Lockwood, 4 N. E. Reporter, 500, we understand this to be the view of the Supreme

Court. In that case, though the point as to the necessity of a demand was raised upon the record, the court entirely ignore the point and place the right to maintain the suit wholly upon the rescission of the contract; and in stating the case of Moriarty v. Stofferan, leave out all reference to a demand.    Mr. Justice Scott, speaking for the court, says : " Conceding then, as must be done, the making of the sale to Lockwood was procured by fraud, was it indispensable before plaintiffs cou'd replevy the goods, there should be a formal rescinding of the contract of sale by returning to or offering to surrender to him the notes taken for the goods ?    That is one of the principal questions made on this record.    Undoubtedly the law is, where a party has received any valuable consideration upon the sale of property, he can not rescind the contract for fraud without returning or offering to return to the purchaser the consideration, whatever it may be.    The title of the fraudulent purchaser is subject to be divested, at the election of the seller, within any reasonable time after the fraud is discovered.

When a sale is thus rescinded for fraud, it is as though no sale had been made, and in that event the original taking will be regarded as a tortious taking without the consent of the vendor, and the title at once becomes reinvested in him as though it had never been divested.    Until the contract is rescinded, it is obvious, both the title and the right of possession remain in the fraudulent purchaser.    This precise question arose in Moriarty v. Stofferan, 89 Ill. 528, and it was there held, that in case of fraud on the part of the vendee of chattels, where nothing but the promissory note of the vendee and another was received, *the vendor, to rescind the sale, must return the note, and this must be done before replevin brought, otherwise the action was premature.*

If, upon the rescission of the contract for fraud, it is as though no sale of the property had been made, and the original taking will be regarded as a tortious taking without the consent of the vendor, as stated in the opinion above quoted, it would be absurd and illogical, and in contravention of the well settled rule, to hold that a demand is necessary before replevin for the goods can be maintained, and the expression

in Moriarty v. Stofferan which would seem to hold the contrary, must, we think, be regarded as inadvertent.

To summarize the doctrine as established by the cases in this State, when goods are obtained by fraudulent representations by a vendee, and no money, note or thing of value has been given the vendor for them, nothing being required to be done to put the vendee in *statu quo*, the vendor may, without demand, maintain replevin for the goods against any person not holding them as a *bona fide* purchaser for value and without notice. Butters v. Haughwout and Bruner v. Dyball *supra.*

When goods have been obtained by fraud, and notes or other things of value have been given in exchange for them, and the vendor seeks to obtain, not the possession of the goods by replevin, but the value of the goods in an action of trespass or trover for the conversion, then the consideration received by the vendor need not be tendered back before action brought, but may be tendered back on the trial, and the rescission so made at the trial will be in apt time; and in such case no prior demand need be proven to sustain the trover count. Ryan v. Brant, 42 Ill. 79.

But if goods are obtained by fraud, and the vendor receives a consideration of any kind therefor from [the fraudulent vendee, before he can maintain replevin for the goods, he must return or offer to return to the vendee the consideration, whatever it may be, before bringing suit, and having done so, and thus rescinded the contract, the original taking will, in law, be regarded as a tortious taking, and no demand need be made for the goods. If, however, the goods are taken on a replevin writ, without the contract having been rescinded, by placing the vendee in *statu quo*, yet a return will not be awarded if plaintiff makes out his claim of fraud, and if the consideration be tendered back on the trial; but in such case the plaintiff will be subjected to the costs. Moriarty v. Stofferan, *supra;* Doane v. Lockwood, *supra.*

It is contended by counsel for appellees that, the goods in this case being in the possession of the sheriff by virtue of an execution against the alleged fraudulent vendee, a demand

upon the sheriff was necessary.   We do not see that the position of the sheriff is any better than that of the fraudulent vendee, if the sale is properly rescinded : Story on Sales, Sec. 445; Ayers v. Hewitt, 19 Me. 281; Bancroft v. Blizzard, 13 Ohio 30 ; Sargent v. Storm, 23 Cal. 359.   The *dicta* in Tuttle v. Robinson, 78 Ill. 334, do not establish the propositions, particularly under facts as in this case.

But the sheriff in this case set up title to the goods in Simon Heller, and claimed a right to hold them under his execution, and throughout the trial contested, as did the other defendants, the plaintiffs' ownership of the goods, and this wholly superseded the necessity of proving a demand. Crauz v. Krogur, 22 Ill. 74 ; Lewis v. Smart, 67 Me. 206 ; O'Neil v. Bailey, 68 Id. 429; Wells on Replevin, 374.

The instruction, therefore, should not have been given, but the error in giving it will avail the plaintiff nothing on this appeal, as we do not think it tended in any manner to mislead the jury on the issue as to the ownership of the property, on which issue the case was mainly tried, and on which issue the jury found the property to be in the defendant Simon Heller, and subject to the execution in the sheriff's hands.

This finding we think supported by the weight of the evidence.   Under Doane v. Lockwood, *supra*, plaintiffs were not entitled to maintain their replevin suit, not having rescinded the contract and tendered Heller his note prior to the commencement of the action, and this, wholly irrespective of the question of demand ; and the jury having, on the plea of property, found the title in defendants, it follows that defendants were entitled to a *retorno*, and the court below was right in so awarding.   The difference between this case and Doane v. Lockwood, in this respect, is,  that there the court took the case from the jury, and the evidence tending to show property in the plaintiff, the Supreme Court held that the contract having been rescinded on the trial the defendant was not to have return of the property.  Here, however, upon all the evidence, the jury have found the property in the defendant, therefore he must have return.

The judgment will be affirmed.

Judgment affirmed